**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-01722-RM-MJW

BLAKE BROWN,
DEAN BIGGS,
JACQUELINE DEHERRERA,
RUTH ANN HEAD,
MARLENE MASON,
ROXANNE MCFALL,
RICHARD MEDLOCK, and,
BERNADETTE SMITH.

   Plaintiffs,

v.

THOMAS E. PEREZ, Secretary of Labor,
UNITED STATES DEPARTMENT OF LABOR, an agency of the United States, and
OFFICE OF WORKERS COMPENSATION, an agency of the United States Department of Labor,

   Defendants.

---

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**

---

THIS MATTER comes before the Court on the parties' cross motions for summary judgment (ECF Nos. 51 & 52).  Plaintiffs Blake Brown, Dean Biggs, Jacqueline Deherrera, Ruth Ann Head, Marlene Mason, Roxanne McFall, Richard Medlock and Bernadette Smith ("Plaintiffs") seek an order finding that Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by improperly responding to their FOIA requests.  Defendants United States Department of Labor, the Office of Workers Compensation, and Thomas E. Perez, the Secretary of Labor ("Defendants") seek an order finding that they responded appropriately to the FOIA requests.  A hearing was conducted on this matter on September 9, 2014.  Upon

consideration of the arguments at the hearing, the *Vaughn* index, papers filed with the Court and the applicable law, Plaintiffs' motion is denied and Defendants' motion is granted.

## I. FACTUAL BACKGROUND

Plaintiffs brought this action under FOIA as part of an effort to demonstrate that the Office of Workers Compensation Programs "engaged in fraud, waste and abuse by selecting referee physicians in violation of federal employees' . . . right to have referee physician[s] randomly and equitably selected from a list of all board certified physicians." (ECF No. 41 at 2.) In order to prove that, Plaintiffs sought various documents related to the referee physician selection process in District 12[1], among them records listing the physicians accepting referrals, the chronological file of referral letters, print outs of selection software screens, and other related documents. (*See, e.g.*, ECF No. 42-6, FOIA Request Example.) In response, Defendants produced some of the requested reports, redacted and produced others, and denied other requests claiming either a FOIA exemption, or that the documents did not exist, or some other defect with the FOIA request, as detailed further below. Plaintiffs contested the withholding of some of these categories of documents that were not produced, and this suit resulted.

### A. Plaintiffs' FOIA Requests

Under the Federal Employees Compensation Act ("FECA"), the Office of Workers Compensation Programs ("OWCP") selects referee physicians to resolve medical conflicts that arise between treating physicians and second opinion physicians hired by OWCP. (ECF No. 72, Proposed Findings of Fact by Plaintiffs, at 1.) FECA provides workers' compensation benefits to civilian federal employees who sustain injury or illness in the performance of duty. (ECF No.

---

[1] The Office of Workers Compensation Program administers the Division of Federal Employees Compensation, the subject of the instant suit, which has various district offices covering groups of states. The instant suit concerns District 12, which covers the following states: Colorado, Wyoming, New Mexico, North Dakota, South Dakota, Montana, and Utah. *See Contacting Your Federal Employees' Compensation District Office*, United States Department of Labor, http://www.dol.gov/owcp/contacts/fecacont.htm (last visited December 19, 2014).

52-1 at 3-4.)  Plaintiffs are claimants who received or are receiving FECA benefits.  (*Id*. at 4.) An individual qualifying for FECA benefits must show a qualifying medical condition supported by a physician's opinion.  (*Id*.)  Where a conflict exists between two physicians' medical opinions, FECA requires the appointment of a third referee physician to resolve the conflict.  (*Id*. at 5.)

OWCP requires that referee physicians be randomly selected from a database of all board certified physicians using OWCP's selection program.  (ECF No. 72 at 2.)  That selection program was called the Physician Directory System (the "PDS") until it was replaced by the Medical Management Application ("MMA").  (*Id*.)

The PDS contained a list of American Board of Medical Specialists ("ABMS") who were chosen as physician referees on a rotational basis.  (ECF Nos. 52 at 2; 72 at 2.)  The opinions of the referee physicians are final and binding.  (*Id*. at 2.)  The company that provided the underlying database containing the ABMS list for the PDS was Elsevier, Inc. ("Elsevier").  (ECF No. 52 at 2.)  The PDS and the MMA were designed to "provide an automatic and strict rotational scheduling feature for selecting referee physicians," as Defendants put it, or to "support the random and neutral scheduling of referee examinations," as Plaintiffs put it.  (ECF Nos. 52 at 2, 72 at 2.)  If the physician selected by the software is not available or unwilling to conduct the examination, that physician is "bypassed" and another physician is selected by the software.  (*See* ECF Nos. 52 at 3; 72 at 2.)

Plaintiffs made FOIA requests for documents starting in 2001 regarding OWCP's referee physician selection process.  (ECF No. 72 at 3.)  Plaintiffs requested information for referee examinations "in accord with FECA Bulletin 01-11 (6/4/02), which describes some of the reports that can be generated by the PDS (now MMA) computer program."  (*Id*.)  All in all, Plaintiffs

3

submitted over twenty FOIA requests from September 2009 through May 2011. (ECF No. 52-1 at 3.) Also, specifically at issue in the cross motions, Plaintiffs requested physician bypass reports and pull-down screens from the PDS and MMA computer systems. (ECF No. 72 at 3.)

    **B.**    **Released and Withheld Information**

According to Plaintiffs, "OWCP for the most part produced the requested reports but redacted the names of the referee physicians claiming FOIA Exemption 6 (privacy)." (*Id*. at 3.) OWCP did not produce bypass reports or screenshots of pull-down menus. (*Id*.) OWCP also did not produce documents or information contained in the PDS; "OWCP has repeatedly advised plaintiffs that it is unable to obtain information from the PDS because it no longer exists." (ECF No. 52-1 at 5.)

In response to Plaintiffs' FOIA requests, OWCP conducted a search of the MMA database. (ECF No. 52-1 at 6.) OWCP then released to Plaintiffs responsive information and documents as a result of that search, including "[b]ypass [s]tatistics report with counts of physician bypass for date range from Start 2000 to End 2001." (ECF No. 52-1 at 11.) OWCP produced other information in redacted form, deleting the names and identifiers of non-plaintiff claimants and physicians. (*Id*. at 10-11.) "In the instances when OWCP made a partial release of information, the description and rationale for withholding the information is included in . . . the [*Vaughn*][2] Index." (*Id*. at 7.)

The *Vaughn* index submitted by Defendants discloses the title of the attached *Vaughn* Exhibit, the subject matter of the document (such as: "Information withheld consists of: physicians' names, physicians' ID numbers"); the exemption asserted (such as: "Witheld in Part: Exemption 4 – commercial information obtained from a person that is confidential"); and the

---

[2] A *Vaughn* index is an agency's compilation listing each withheld document and explaining the asserted basis for its nondisclosure. *Anderson v. Dep't. of Health & Human Serv.*, 907 F.2d 936, 940, n.3 (10th Cir. 1990); *see Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

applicable Plaintiffs. Defendants also attach a supporting declaration by an OWCP official, Julia Tritz (ECF No. 52-1 at 1-19), detailing Plaintiffs' requests and Defendants' responses, and attaching further supporting documentation.

## II. ANALYSIS

There are many factual disputes between Plaintiffs and Defendants and the briefing and supporting documentation is voluminous, but the actual issues that must be decided are relatively narrow and concise in this case—first, whether physician and client names, phone numbers, addresses and other identifiers were rightfully withheld under FOIA; second, whether OWCP was required to create print-outs of computer screenshots of drop-down menus and produce them under FOIA.[3]

### A. FOIA

"FOIA is designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Anderson v. Dept. of Health & Human Serv.*, 907 F.2d 936, 941 (10th Cir. 1990) (citation and internal quotation marks omitted). Accordingly, FOIA is to be broadly construed in favor of disclosure and its exemptions are to be narrowly construed. *Id.*

The agency must demonstrate that it made a good faith effort to conduct a search for the FOIA records requested, using methods which are reasonably calculated to uncover all relevant documents. *Schwarz v. FBI,* No. 98-4036, 1998 WL 667643, at *1 (10th Cir. Sept. 17, 1998); *Information Network for Resp. Mining ("INFORM") v. Bureau of Land Mgmt.*, 611 F.Supp.2d

---

[3] Defendants' Motion for Summary Judgment assumes that Plaintiffs were contesting the withholding of claimant names and identifiers, but as they note in their responsive briefing, "Plaintiffs did not argue that claimant's names and identifiers must be released…Plaintiffs are apparently satisfied by OWCP's decision to provide the last four digits of claim numbers." (ECF No. 57 at 9-10.) Plaintiffs did not address that statement either affirmatively or negatively in their reply brief in response to that filing. Plaintiffs listed other FOIA requests in their Motion for Summary Judgment which Defendants contend are beyond the scope of this litigation, and they similarly do not respond to this charge. (*See id.* at 19.) Defendants are correct that Plaintiffs responsive briefing "takes issue with only two aspects of OWCP's FOIA responses: (1) the redaction of doctors' names and other information; and (2) OWCP declining to create printouts of certain computer screens." (ECF No. 63 at 4.) A *Vaughn* Index has been produced which substantiates Defendants' position on the nonproduction of all other documents.

1178, 1184 (D.Colo. 2009) ("*INFORM v. BLM*").  "To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate."  *Schwarz v. FBI, supra* at *1 (citation and quotation marks omitted).  "The affidavits must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Id.* at *1 (citation and quotation marks omitted).  The reasonableness of the agency's search depends on the facts of each case.  *INFORM v. BLM, supra* at 1184.

A search is not unreasonable simply because it failed to produce all relevant material.  "The fundamental question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*."  *Schwarz v. FBI, supra* at *2 (citation and quotation marks omitted; italics in original).  *See also* James T. O'Reilly, *Federal Information Disclosure*, § 7.8 ("Records search disagreements – Reasonableness") (2013).

In order to withhold responsive information uncovered, the government agency must prove the requested information falls within one, or more, of the nine specific exemptions from disclosure.  *Hull v. I.R.S.*, 656 F.3d 1174, 1177 (10th Cir. 2011); 5 U.S.C. § 552(a)(4)(B) & (b).  "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  The Court may enjoin the agency from withholding records or order the production of any documents improperly withheld.  5 U.S.C. § 552(a)(4)(B).

Where, as here, the parties file cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties,

but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997.) The Court reviews the government's refusal to release requested information *de novo*. *Hull v. I.R.S., supra* at 1177; 5 U.S.C. § 552(a)(4)(B). The Court has a variety of options it may utilize to determine whether a sufficient factual basis exists for evaluating the correctness of the agency's action, including ordering the production of the withheld information, or some sample thereof, for an *in camera* review; reviewing detailed affidavits/ declarations; or reviewing a *Vaughn* index. *See Hull v. I.R.S., supra* at 1177-1178; *Anderson v. Dep't. of Health & Human Serv., supra* at 942. "If the government agency's *Vaughn* index and affidavits are reasonably clear, specific, and detailed, the court normally affords agency determinations substantial weight." *Public Emp. for Envir. Resp. (PEER), Rocky Mtn. Chapter v. U.S. EPA*, 978 F.Supp. 955, 960 (D.Colo. 1997). If the information provided is insufficient, the Court may issue further orders to ensure it has an adequate foundation for its review. *Anderson v. Dep't. of Health & Human Serv., supra* at 942.

   B.  **Information Withheld Under Exemption 4**

  Defendants contend that some of the information withheld is covered by Exemption 4 of FOIA; namely, the physician names, addresses, phone numbers and identification numbers. (ECF No. 52 at 9.) Exemption 4 is asserted with respect to the referenced data as contained in Physician Activity Reports, Physician Usage Reports, Physician Prompt Pay Lay Reports, and certain IT reports as disclosed by the *Vaughn* index.

  Exemption 4[4] exempts from disclosure trade secrets and commercial or financial information that is privileged or confidential. If not a trade secret, for Exemption 4 to apply the

---

[4] Plaintiffs argue that OWCP is no longer permitted to assert Exemption 4 because they failed to refer to it in letters to Plaintiffs prior to litigation. The Court is persuaded by a review of the case law that Defendants did not waive

information must be "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." *Anderson v. Dept. of Health and Human Services et al.*, 907 F.2d 936 (10th Cir. 1990) (quoting *National Parks and Conservation Ass'n v. Mortion*, 498 F.2d 765, 766 (D.C. Cir. 1974) (hereinafter *National Parks*)). Plaintiffs argue that the information withheld under Exemption 4 is not commercial in nature, was not obtained from a person, and is not confidential, and thus that it does not meet any of the three requirements for Exemption 4.

Plaintiffs argue that since the redacted names were generated by OWCP software, "compiled by the government," rather than obtained from a person, this information cannot fall within Exemption 4. (ECF No. 53 at 11.) Defendants respond by noting that though OWCP accesses the data using its own software, the data that Plaintiffs seek actually comes from a private business entity, thus meeting the Exemption 4 requirement that the information be "obtained from a person." (ECF No. 63 at 6.) *See, e.g.*, *Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 98 (D.D.C. 2013) ("[T]he statute makes clear that a 'person includes an individual, partnership, corporation, association, or public or private organization other than an agency.'") (quoting 5 U.S.C. § 551(2)). The Court agrees with Defendants both on that point and also that the information sought in this context is clearly commercial in nature.

Turning now to the confidentiality requirement, there are two different tests for whether information is "confidential." According to the Tenth Circuit, the "first step . . . is determining whether the information submitted to the government agency was given voluntarily or involuntarily." *Utah v. U.S. Dep't of Interior*, 256 F.3d 967, 969 (10th Cir. 2001) (citing *Critical*

---

any FOIA exemptions by not raising them prior to this litigation. *E.g.*, *Cuban v. S.E.C.*, 744 F. Supp. 2d 60, 90 (D.D.C. 2010) on reconsideration in part, 795 F. Supp. 2d 43 (D.D.C. 2011) (quoting *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992) ("[A]n agency does not waive FOIA exemptions by not raising them during the administrative process.").

*Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878-879 (D.C.Cir.1992) (en banc) (hereinafter *Critical Mass*)). If voluntary, the *Critical Mass* test applies and the information is protected from disclosure if "it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass* at 879. On the other hand, if the submission was involuntary, the *National Parks* test applies, and the information is protected from disclosure by FOIA if disclosure will either "(1) ... impair the government's ability to obtain necessary information in the future or (2) ... cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks* at 770.

Both parties appear to agree that *National Parks* is the correct test, but the Court finds it less than clear whether *National Parks* should apply versus *Critical Mass*. The data at issue is part of a database provided by Elsevier under a commercial license agreement with the government. Defendants note that the information sought "was provided to OWCP pursuant to a licensing agreement, so it was required to be provided," without addressing that Elsevier was not required to undertake that agreement in the first place. (ECF No. 52 at 13.) No matter which test is applied, however, the Court finds that Defendants prevail.

Under *Critical Mass*, the Court concludes that the information sought by Plaintiffs, specifically, the names and identifiers for physicians in various contexts, would not customarily be released to the public by a private company, Elsevier. The value of a commercial database is inconsistent with the free and ready disclosure of its contents—even if restricted to District 12. And information from Elsevier in the form of a communication to OWCP, despite Plaintiffs' criticism,[5] shows that Elsevier considers the information in its database to be such that it would

---

[5] Plaintiffs suggest that the government encouraged Elsevier to object. (*See* ECF No. 53 at 5 ("Defendant encouraged an objection and prompted Elsevier on how to couch its objection . . . .").)

not be customarily released to the public by Elsevier. (*See* ECF No. 52-1, Elsevier Letter, at 48-49) (stating that if OWCP disclosed the information sought in the FOIA requests, "we would be unable to continue providing information and updates to DOL [Department of Labor], would likely terminate the existing License, and may seek injunctive relief . . . .").

Under *National Parks*, the Court concludes that disclosure would impair the government's ability to obtain necessary information in the future. It requires little deductive reasoning to reach the conclusion that companies in the business of licensing commercial data to the government would be less likely to do so if their confidential data could be accessed by anyone simply by making a FOIA request. Indeed, with respect to the PDS, the predecessor of the current MMA, the Ninth Circuit has previously found Exemption 4 to apply. *See O'Harvey v. Comp. Programs Workers*, 188 F.3d 514 (9th Cir. 1999) (unpublished opinion). Based on this, as well as the Declaration of Julia Tritz, the Court finds that Exemption 4 applies. And as to the alternative Exemption 4 basis – safeguarding the submitter from competitive disadvantage – the Court finds that this rationale too applies based on the Declaration and the Elsevier letter to OWCP, discussed above. Under either test, the information sought is confidential.

On a separate note, Plaintiffs generally argue that since the information it seeks is available to the public at the ABMS website, it is not confidential. (ECF No. 53 at 10.) Defendants respond that although physician names and identifying information is obviously known to the public, "context matters" because "the information requested would show that the doctors performed referee examinations on specific individuals on specific dates." (ECF No. 63 at 6.) On this point, the Court agrees with Defendants that context matters. The public nature of the names, addresses and phone numbers of physicians does not mean that the information is not confidential when it is given in the context of documents that reveal a physician's activities,

referrals, clients, etc. The Court finds that the information is confidential, and that Exemption 4 applies.

      C.      **Information Withheld Under Exemption 6**

Defendants redacted certain information from a variety of documents from medical and claim files. The information withheld pertained either to the physicians performing examinations or to the claimants with respect to whom examinations were made. The withheld material includes such matters as physician EIN numbers, patient names or identifiers and other physician identifiers including names and addresses.[6]

The *Vaughn* index, along with other supporting evidence, substantiates the OWCP's withholding of documents claimed under Exemption 6. Under this exemption, the agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" "has a broad, rather than a narrow, meaning and encompasses all information that applies to a particular individual." *Forest Guardians v. U.S. F.E.M.A.*, 410 F.3d 1214, 1217 (10th Cir. 2005) (internal quotation marks omitted). Here, the limited information segregated and withheld through redaction contains personal names and identifiers within "similar files." (ECF No. 52-1 at 21-24.)

In evaluating whether Exemption 6 should apply, courts balance the privacy interest of the persons whose information would be released against the public interest the requestors demonstrate. *See, e.g.*, *Sheet Metal Workers Intern. Ass'n Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995). The Supreme Court has narrowly defined "public interest" to mean "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is

---

[6] Defendants also redacted case numbers from records produced, but has agreed to reproduce the same, redacting only the first five of the nine digit case numbers.

'contribut[ing] significantly to the public understanding of the operations or activities of the government.'" *U.S. Dept. of Defense v. Federal Labor Relations Authority*, 114 S.Ct. 1006, 1012 (1994) (quoting *Dept. of Justice v. Reporters Comm.*, 109 S.Ct. 1468, 1482-83 (1989)) (alteration in original).

Plaintiffs argue that they are entitled to the redacted data as the data will shed light on "whether a particular physician performs a disproportionate share of the exams" without impinging "significantly on cognizable interests in personal privacy" for the physicians. (ECF No. 51 at 19.)

Defendants argue that the required link or nexus between the requested public records and the asserted public interest is wanting here "because Plaintiffs allegedly already have conclusive evidence of OWCP impropriety, and they offer no explanation how the requested records would advance their understanding of that issue." (ECF No. 57 at 16.) Defendants also point out that the information requested would not show what Plaintiffs claim it would. If, for example, all they receive is information about which physicians ultimately perform the referee examinations, that would not shed light on whether the OWCP selection process is operating as it should, since both selected physicians and the claimants themselves may have previously challenged or declined a selection resulting in the "selected" physician not performing the examination. (*Id.*)

In the Court's view, the bottom line with regard to Exemption 6 is that the physicians and private individuals appearing in case files have a clear privacy interest in their personal and business information. That interest, as made clear by a review of the applicable case law, includes "the individual's control of information concerning his or her person" and includes names and addresses. *See, e.g.*, *Forest Guardians*, 410 F.3d at 1218 (citing *United States Dep't*

*of Defense v. FLRA*, 510 U.S. 487, 500 (1994)).  This privacy interest is not outweighed by any public interest that has been articulated by Plaintiffs, and the Court will not require disclosure of the redacted identifiers.

### D. Creation of Screenshot Printouts

Plaintiffs seek printouts of screenshots showing pull down menus, which they say are "needed to show the functions that the referee physician software system the PDS can perform." (ECF No. 51 at 19.)  Defendants argue that the printouts of screenshots of dropdown menus "do not exist, and FOIA does not require an agency to create records to subsequently disclose." (ECF No. 63 at 10.)  In response to this argument, Plaintiffs cite no case law to contravene the notion that FOIA simply does not require Defendants to create screenshots and printouts where none previously existed, but merely argue that "[c]learly, it's not that OWCP can't print the pull down menus; it's that OWCP will not print the pull down menus." (ECF No. 53 at 20.)[7]  They then cite Defendants language that "screen shots are not created or maintained as part of the scheduling process," and simply respond that "plaintiffs' request for pull down menus does not concern the scheduling process." (*Id*.)  They cite nothing and this Court has found nothing that would call into question Defendants interpretation of the controlling case law which, as set forth below, supports Defendants' argument that they were not required to create and print screenshots.

The Court agrees with Defendants that FOIA "does not oblige agencies to create or retain records; it only obliges them to provide access to those which it in fact has created or retained." *Kissinger v. Reports Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).  Defendants

---

[7] In terms of the print outs, OWCP's FOIA response was that no responsive records existed because "OWCP stopped using the PDS in 2005 . . . [and] in PDS's replacement, the MMA, the referee selection process can only be done for an actual claimant and screenshots are not printed or otherwise created or maintained as part of the scheduling process." (ECF No. 73 at 6-7.)

will not be required to create and then produce printouts of computer screenshots as requested by Plaintiffs.

### III. CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1. Defendants' Motion is GRANTED;

2. Plaintiffs' Motion is DENIED;

3. Given the instant Order, all other pending motions (such as the Objection to Magistrate Judge's Order Pending Discovery, ECF No. 15) are hereby DENIED AS MOOT;

4. With the issuance of the instant Order, all issues before the Court are now resolved and the Clerk of the Court is directed to close this case.

DATED this 23rd day of December, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge