**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 13-cv-01722-RM-MJW

BLAKE BROWN, *et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR, *et al.*,

    Defendants.

___

**OPINION AND ORDER**
___

Pending before the Court is proposed intervenor Elsevier, Inc.'s ("Elsevier") Motion to Intervene ("the motion to intervene") (ECF No. 92), pursuant to Fed.R.Civ.P. 24(a) ("Rule 24(a)"). Plaintiffs have filed an objection to the motion to intervene (ECF No. 103), and Elsevier has filed a reply (ECF No. 105).[1] The Court makes the following findings.

**I.    Legal Standard**

Rule 24(a) requires intervention as a matter of right when anyone "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2). Any such request to intervene as a matter of right must be made on timely motion. *Id*. Timeliness is assessed based upon

---

[1] Also pending are plaintiffs' and defendants' motions for discovery. (ECF Nos. 98, 100.) The Court will address the same in a separate order.

the totality of the circumstances, with three factors being "particularly important." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010). First, "the length of time since the movant knew of its interests in the case." Second, "prejudice to the existing parties." And third, "prejudice to the movant." *Id*. (alterations and citations omitted). These factors are not exclusive, and a court "should also consider the existence of any unusual circumstances." *Id*. (citation omitted).

## II.  Discussion

The Court addresses the timeliness of the motion to intervene first. Elsevier argues that its motion to intervene was timely filed because all factors weigh in its favor. (ECF No. 92 at 9.) First, Elsevier asserts that it moved promptly to intervene because it did not become aware of this case until September 2014, and nothing at that time suggested that defendants would not protect its interests. (*Id*. at 9-10.) Elsevier further asserts that entry of summary judgment did not alter matters as the judgment was favorable to Elsevier's interests and defendants vigorously defended those interests on appeal. (*Id*. at 10.) Elsevier asserts that only after this case was remanded did things change, as its issue of concern was remanded for discovery and trial. (*Id*.)

The Court disagrees that Elsevier moved promptly to intervene. The Tenth Circuit Court of Appeals measures delay "from when the movant was on notice that its interests may not be protected by a party already in the case." *Edmondson*, 619 F.3d at 1232 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994)). Contrary to plaintiff's argument, the letter dated September 22, 2014, provided plaintiff with notice that its interests may not be protected by a party to this case. Although the letter may not have informed plaintiff that cross motions for summary judgment had been filed, the letter clearly notifies plaintiff of this lawsuit. As Elsevier asserts, notice of a lawsuit alone is

2

insufficient, *see id.*, but, the purpose of that rule is to prevent premature intervention that wastes judicial resources, *see Sierra Club*, 18 F.3d at 1206. Here, as Elsevier observes, by the time the September 22, 2014 letter had been written, the cross motions for summary judgment (which purportedly contain the offending assumptions that Elsevier's database was an agency record and involuntarily submitted) had already been filed. It thus cannot be said that, at that time, Elsevier could legitimately believe that defendants would protect the interests asserted in the motion to intervene, when even a cursory review of the docket would have shown that the cross motions for summary judgment had been filed and the offending assumptions made. Otherwise, rather than encouraging premature intervention, the Court would be encouraging the art of burying one's head in the sand.

Moreover, it is not as if the September 22, 2014 letter misled Elsevier into believing that defendants would adequately protect the specific interests Elsevier seeks to protect in the motion to intervene. *See Edmondson*, 619 F.3d at 1233 (explaining that the relevant interests are those pursued in the motion to intervene). The letter is utterly silent on how defendants are defending this lawsuit or the procedural state of this case.[2] Instead, the letter asks Elsevier to express its views on the lawsuits. (*See* ECF No. 93-4 at 3.) How Elsevier could do so without performing even a cursory review of this case's docket is beyond the Court.

Even assuming that the September 22, 2014 letter did not provide notice to Elsevier that defendants were not adequately protecting its interests, the Court's entry of summary judgment on

---

[2] The Court also does not credit Elsevier's assertion that by attaching two complaints to the letter, defendants "seemed to indicate that matters were at a very early stage." (*See* ECF No. 92 at 6.) First, a cursory review of the docket would have shown Elsevier this was not the case. Second, the letter clearly identified this case by number, name, and district. (*See* ECF No. 93-4 at 3.) The case number indicated that this case was filed in 2013, at least nine months before the letter was sent.

December 23, 2014 categorically did. Although Elsevier asserts that entry of summary judgment did not alter the state of affairs in this case (ECF No. 92 at 10), in reality, Elsevier does not reasonably contend otherwise. In fact, Elsevier acknowledges that the Order, granting summary judgment in defendants favor, operated under the assumption that Elsevier's submission of its information was involuntary and the information itself was an agency record. (*See id* at 2, 11-12.) Moreover, there is no assertion that Elsevier did not receive notice of the Court's December 23, 2014 Order. Instead, Elsevier asserts that it decided to "hold its fire" (*id*. at 10), even though it knew that the Order was premised upon assumptions, which, according to Elsevier, did not adequately protect its interests (*id*. at 11-15).[3] In other words, Elsevier decided to wait and see if the favorable result of the December 23, 2014 Order would persist. That is not the purpose of intervention. *See S. Utah Wilderness Alliance v. Kempthorne*, 525 F.3d 966, 971 (10th Cir. 2008) (explaining that a motion to intervene must be timely "[o]therwise a proposed intervenor might simply wait and see if the trial's outcome leaves intervention desirable with its attendant risk of undoing what the trial court has already done.") (quotation omitted).

The Court also gives no weight to Elsevier's assertion that intervening in the appeal of the December 23, 2014 Order would have posed "inherent difficulties." (*See* ECF No. 92 at 10.) Apart from the fact that Elsevier does not identify any of the purported inherent difficulties that would have arisen had it sought to intervene on appeal, just because an avenue may be difficult to cross does not

---

[3] The Court notes an inherent contradiction in Elsevier's arguments. On one hand, Elsevier asserts, when attempting to explain its reasons for not intervening after entry of the December 23, 2014 Order, that the Order was favorable to its interests from a practical standpoint. (ECF No. 92 at 10.) On the other hand, Elsevier later asserts, when attempting to explain why its interests might be impaired if it is not allowed to intervene, that an order in favor of defendants based upon the wrong legal basis could impair Elsevier's ability to protect its interests. (*See id*. at 15.) Much like its conduct in failing to move to intervene following entry of the December 23, 2014 Order, Elsevier is again trying to have its cake and eat it.

excuse Elsevier's failure to even try. Otherwise, a party could pick and choose its occasion to intervene based upon the assumed ease of success. That cannot be the case. In addition, how can the Court take seriously Elsevier's assertions of great prejudice if it is not allowed to intervene, when Elsevier itself chose not to intervene? As such, the Court disagrees with Elsevier's assertion that it "reasonably" decided to hold its fire. (*See id*.) There was nothing reasonable about Elsevier's decision; it was purely a tactical manoeuver.

Elsevier also asserts that the Tenth Circuit's remand order changed the state of this lawsuit. (ECF No. 92 at 10.) Again, the Court disagrees. Contrary to Elsevier's assertion, "the issue of concern" to it has *not* been remanded for discovery and trial. (*See id*.) Presumably, the "issue of concern" to Elsevier is the reason it gives for intervening—so it can argue that a "database licensed to a government agency by a party such as [Elsevier] is not an agency record subject to [the Freedom of Information Act], because it is not under agency control within the meaning of [the Act]." (*See id*. at 2.) That issue was certainly not remanded to this Court for discovery and trial. Instead, the only time that the Tenth Circuit arguably mentioned the issue was in a footnote, where the Circuit explained that, arguably, Elsevier's submission of data to defendants was voluntary, but, it was not necessary to reach that issue because the parties agreed that the submission was involuntary. (*See* ECF No. 87 at 10 n.4.)[4] Thus, rather than remanding the issue, the Tenth Circuit clearly explained that the issue was not reached. Put simply, the Tenth Circuit's remand has changed nothing in this case in terms of the legal issues before the Court, the only thing that has changed is that factual disputes exist preventing entry of summary judgment on those legal issues.

---

[4] The Court uses the page numbers assigned to the Tenth Circuit's opinion by the CM/ECF system in the top right-hand corner of the document.

In summary, because Elsevier has failed to provide an adequate explanation for why it failed to intervene after receiving the September 22, 2014 letter, and/or for why it chose to "hold its fire" after entry of the December 23, 2014 Order, and because nothing has changed in this case, the Court finds that the first factor of the timeliness inquiry weighs strongly against Elsevier.

The second factor is prejudice to the existing parties. Elsevier asserts that allowing it to intervene will not cause prejudice to the existing parties because intervention will not disrupt any schedule or cause any additional expense, and discovery directed at Elsevier will be needed with or without its intervention. (ECF No. 92 at 10-11.) As Elsevier asserts, prejudice in this respect is prejudice caused by the movant's delay. *Edmondson*, 619 F.3d at 1236. In its reply, Elsevier points to the prejudice caused by its delay. Specifically, Elsevier concedes that, if allowed to intervene, this case would be in no different a place than if it had intervened in September 2014. (*See* ECF No. 105 at 2.) The problem for Elsevier is that it is not 2014 now. In other words, this case has proceeded far beyond where it was in September 2014; to return it to a procedural state that would otherwise have been completed is undoubtedly prejudice caused by Elsevier's delay.

In that regard, the Court gives no weight to Elsevier's assertion that it is up to the Court whether Elsevier's new arguments will require further summary judgment practice or can proceed directly to trial. (*See* ECF No. 105 at 2-3.) Although the decision is very much the Court's, there is not really a decision to make. If the Court were to allow Elsevier's arguments to go directly to trial without being subject to the rigours of summary judgment, the Court would essentially be rewarding Elsevier for choosing not to intervene in this case when it should have done.

That being said, assessing the degree of prejudice from Elsevier's failure to intervene sooner is made more difficult here, given that it is hard to assess how this case would have unfolded had

6

Elsevier intervened sooner. In other words, conceivably, the amount of delay caused by the instant motion to intervene may only be minimally more than any delay that may have been caused if Elsevier had timely moved to intervene. Although Elsevier should not reap advantage from this self-created uncertainty, the Court finds that the prejudice-to-existing-parties factor weighs only slightly against Elsevier.

The third factor is prejudice to the movant if it is not allowed to intervene. Elsevier asserts that it will be prejudiced because this case "will continue to proceed down the wrong path" in terms of whether Elsevier's information was voluntarily or involuntarily submitted to defendants. (ECF No. 92 at 11-12.) Elsevier asserts that if this wrong path is taken, defendants will face a heavier burden of proving exemption under the Freedom of Information Act ("FOIA"). (*Id*. at 12.) Elsevier further asserts that its information is not an agency record for purposes of FOIA. (*Id*. at 12-13.) Elsevier also asserts that its interests will be harder to protect in other situations if this case is decided on faulty premises, and a statement in the Tenth Circuit's order remanding this case "sends an unfortunate signal to Elsevier's customers and competitors." (*Id*. at 13.)

As for the latter assertion, the Tenth Circuit's statement—that Elsevier had not intervened in this case or voiced an objection to disclosure on the record—was an entirely accurate statement. As such, it cannot be prejudicial to Elsevier, especially when the statement was the result of Elsevier's own mistake in failing to intervene sooner. As for the assertion that Elsevier's interests will be harder to protect, Elsevier makes no attempt to explain this cryptic foreboding. Thus, the Court gives it no weight.

This leaves the two legal arguments Elsevier wishes to assert if allowed to intervene. As mentioned *supra*, it is difficult to take Elsevier's assertions entirely at face value given that Elsevier

was quite happy to have defendants "vigorously" defend its interests on appeal. (*See* ECF No. 10.) In any event, Elsevier's assertions of prejudice are, at best, speculative. First, there is no guarantee that Elsevier's argument, that its information was voluntarily submitted, even if accepted, would produce a result in its favor. Elsevier asserts that, if its information was voluntarily submitted, a "lower bar" would apply to the Exemption Four analysis because it would only have to prove that its information would not customarily be released to the public by the person from whom it was obtained. (*See id*. at 11-12.) However, the Tenth Circuit observed that it was an "open question" whether Elsevier could object to disclosure of its information because plaintiff had produced evidence indicating that the some of the information was available on a public website. (*See* ECF No. 87 at 14.) As far as the Court can discern, at best, the inquiry into whether Elsevier's information would customarily be released to the public is as fact specific, and thus, uncertain in light of the limited evidence in the record, as any of the inquiries defendants may pursue to prove the applicability of Exemption Four. Second, other than asserting that defendants' arguments in this regard are subject to a "heavier" burden (*see* ECF No. 92 at 12), Elsevier offers no non-speculative explanation for how it may be prejudiced by defendants preceding down the same path they have trodden throughout this case.

Third, it is equally uncertain whether Elsevier's argument—that its information is not an agency record for purposes of FOIA—will succeed. Elsevier's argument in this regard appears to rely on an out-of-circuit district court case. (*See id*. at 13.) As such, even if the facts of that case are similar to the facts here, there is no reason why this Court must accept its legal test for assessing whether information is an agency record. Ultimately, as Elsevier concedes, defendants have vigorously defended Elsevier's interests so far in this case. The fact that the parameters of

8

defendants' efforts might have been broader does not mean that Elsevier has suffered any meaningful prejudice. As a result, to the extent this factor weighs in Elsevier's favor at all, it is only slight.

In summary, while the second and third factors of the timeliness inquiry are in equipoise, in that they weigh, respectively, slightly against and slightly in favor of Elsevier, the first factor weighs strongly against Elsevier. The final consideration is whether unusual circumstances weigh in favor or against intervention. Elsevier's argument in this regard is that, if this case is decided on the "faulty premise" of its information being an agency record, any such decision would be "at odds" with existing precedent and "create commercial uncertainty for all parties nationwide that provide proprietary data to U.S. Government agencies." (ECF No. 92 at 13-14.) Put simply, that is wrong. First, to the extent any final decision in this case assumed that Elsevier's information was an agency record, it would not put the same at odds with any other case, given that, here, as Elsevier acknowledges, the parties have worked under the assumption that the information is an agency record. As such, there would be no *finding* of this Court in that regard, and thus, nothing at odds with any other case. Second, as for "commercial uncertainty," apart from being an unexplained statement, for the same reason, it is utterly worthless, given that no binding precedent would be created by an assumption with respect to an issue that the existing parties did not contest. As a result, Elsevier's dark projections do not constitute unusual circumstances that weigh in its favor.

The Court does discern one unusual circumstance in this case. There is a reason why Elsevier asserted that intervening on appeal of might have "inherent difficulties." That is because intervening on appeal, *when the entity has not sought to intervene in the district court*, is only allowed "in an exceptional case for imperative reasons." *Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017) (quotation omitted). In this case, the Court has proceeded with

9

respect to the instant motion to intervene on the basis that Rule 24(a) and the timeliness inquiry apply as if Elsevier had moved to intervene when this case was originally before the Court, i.e. before an appeal. That, though, is not what happened here, and what makes the procedural posture of this case an unusual circumstance.

Notably, Elsevier believes that it has avoided having to show an exceptional case and imperative reasons by waiting for the appeal to end and this case to be remanded. But, really, Elsevier should be subject to an even stronger standard because Elsevier not only failed to intervene in the district court originally, but also failed to intervene on appeal. It seems fundamentally preposterous for Elsevier to be able to reap advantage from its delay-tactics, or for Elsevier to get a do-over, merely because this case is back before the Court on remand, when, as explained, nothing has changed other than the need to resolve factual disputes on the pre-existing arguments made by the parties. Put simply, although the Court has applied a legal standard as if Elsevier had sought to intervene before the appeal, the Court does not find that to be the case, and finds that Elsevier's failure to intervene not once, but twice is an unusual circumstance that weighs against intervention.

As a result, because the Court finds that two factors weigh strongly against intervention, while two other factors are a wash, the Court finds that the motion to intervene was untimely filed, and DENIES the same.[5]

---

[5] Although the Court need not address the other parts of the overall Rule 24(a) analysis, the Court also finds that Elsevier has failed to show that defendants do not adequately represent its interests. Notably, Elsevier does not make this argument. Instead, Elsevier argues that defendants are "not in a position to represent Elsevier's *best interests*." (ECF No. 92 at 15-16) (emphasis added). Defendants do not have to represent Elsevier's best interests, they need only adequately represent Elsevier's interests. Here, there is no evidence that defendants' representation of Elsevier's interests has been less than adequate. Moreover, defendants' objective in this case is identical to that of Elsevier—to prevent disclosure of information contained in databases licensed to defendants. *See Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844-845 (10th Cir. 1996) (explaining that, although the burden of showing inadequate representation is "minimal," "representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties.") (quotation and internal quotation omitted). Here, Elsevier has made no argument that its objective is not identical to defendants'.

## III. Conclusion

For the reasons discussed herein, the Court DENIES the motion to intervene (ECF No. 92).

**SO ORDERED.**

DATED this 13th day of July, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge